RECEIVED
AUG 19 2026
AT 8:30 ______ M
CLERK, U.S. DISTRICT COURT - DNJ

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES *ex rel.* 19 CATCH, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SEASTREAK HOLDING COMPANY, LLC,<br><br>Defendant. | Civil Action No.<br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)<br><br>31 U.S.C. § 3729-33 *et seq.* |

## FALSE CLAIMS ACT COMPLAINT

19 CATCH LLC ("Relator") brings this action as a *qui tam* relator on behalf of the United States against, SeaStreak Holding Company, LLC ("Defendant"), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-33, to recover damages, penalties, attorney fees and costs, and other relief.

## Introduction

1. Defendant SeaStreak Holding Company, LLC fraudulently obtained a total of over $3,004,047.00 in forgiven first and second draw Paycheck Protection Program ("PPP") loans.

2. Defendant, along with its affiliated entities, upon information and belief, was well over the 500-employee cap for first draw PPP loans and the 300-employee cap for second draw PPP loans.

3. Defendant also did not meet any of the other PPP eligibility criteria for first draw loans.

4. Had Defendant been candid about its affiliates' employees on their PPP loan applications, Defendant would not have received its PPP loans and United States taxpayers would have saved over $3,004,047.00 in forgiven loan proceeds and lender processing fees.

5. Relator is an original source of the Complaint allegations within the meaning of 31 U.S.C. § 3730(e)(4)(B). Relator's knowledge is independent of, and materially adds to, any publicly disclosed information: the corporate structure linking the Defendant and its affiliated entities, the aggregate employee and receipts figures for the affiliated entities, and the resulting size ineligibility have not been publicly disclosed in any federal criminal, civil, or administrative hearing, in any congressional, Government Accountability Office, or Federal agency report, hearing, audit, or investigation, or in the news media. Prior to filing this Complaint, Relator voluntarily disclosed to the Government the facts and evidence underlying these allegations.

6. This action is filed *in camera* and under seal pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3730(b)(2).

**Jurisdiction and Venue**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732, which confers jurisdiction over actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

8. This Court may exercise personal jurisdiction over Defendants, and venue is appropriate in this Court, under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because Defendants submitted, or caused the submission of, false claims in this District, and a substantial part of the events or omissions giving rise to Relator's claim occurred in this District.

**The Parties**

9. Relator 19 CATCH, LLC ("Relator" or "19 Catch") is a Single-Member Limited Liability Company registered in New Jersey. Relator brings this action based on its direct, independent, and personal knowledge of the facts, and also upon information and belief. Relator is an original source of this information to the United States.

10. Defendant SeaStreak Holding Company LLC ("SeaStreak Holding") is a limited liability company that was formed, upon information and belief, in or about 2008 operating and transacting business in Monmouth County, New Jersey, within this district and elsewhere.

11. BMO Bank, National Association ("BMO Bank") and Valley Economic Development Partners ("Valley Partners") are the financial institutions that processed the PPP loans submitted by the Defendant.

## Legal Background

### A. The False Claims Act

12. The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

13. For purposes of the False Claims Act, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information[,] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

**B. The Paycheck Protection Program**

14. In March 2020, through the CARES Act, Pub. Law 116–136, Congress established the PPP to provide economic relief for small businesses during the coronavirus pandemic.

15. Under the first round of the PPP, an eligible business could apply for a loan of up to 2.5 times its average monthly payroll, with a maximum $100,000 annual salary per employee, during the one-year period before the date on which the loan was made, subject to a maximum amount of $10 million. *See* 15 U.S.C. § 636(a)(36)(E); *see also* Small Business Administration ("SBA") Form 2483, Instructions.

16. An applicant for a first draw PPP loan could qualify as an eligible business under any of three standards:

> (1) having an average of no more than 500 employees during 2019 or during the 12 months prior to applying for a first draw PPP loan, *see* 15 U.S.C. § 636(a)(36)(D)(i)(I) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 14 (April 6, 2020);
>
> (2) the SBA employee-based or revenue-based size standard corresponding to the business's primary industry, *see* 15 U.S.C. § 636(a)(36)(D)(i)(II) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2; or
>
> (3) the SBA's alternative size standard, which provided that the business must have (a) a maximum tangible net worth of not more than $15 million, and (b) average net income after tax of not more than $5 million for the business's two full preceding fiscal years as of March 27, 2020, *see* 86 Fed. Reg. 15083, 15085 n.5 (Mar. 22, 2021) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2.

17. Under each of these eligibility standards, the law required the business to include its affiliates in assessing whether the business met the standard. *See* 15 U.S.C. § 636(a)(36)(D)(iv). The affiliation rule in effect at the time provided that "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." 13 C.F.R. § 121.301(f) (2019) (*available at* 81 Fed. Reg. 41423,

41428 (June 27, 2016)). The rule further elaborated that affiliation could arise under various circumstances, including:

> Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.
>
> Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one o[r] more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.
>
> Affiliation based on identity of interest. Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially, identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

*Id.*; *see also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (April 3, 2020).

18. In guidance that SBA issued on April 6, 2020, the agency included the following:

> **Question:** Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?
>
> **Answer:** Yes. Borrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation. A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that certification means that the borrower is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), meets the applicable SBA employee-based or

> revenue-based size standard, or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable. SBA's existing affiliation exclusions apply to the PPP, including, for example the exclusions under 13 CFR 121.103(b)(2).

SBA, *PPP Loans Frequently Asked Questions*, Question 5 (Apr. 6, 2020).

19. The PPP statute waived the affiliation rules for hotels and food service businesses. Specifically, the PPP statute provided that the SBA affiliation rule was waived for "any business concern with no more than 500 employees that, as of the date on which the covered loan is disbursed, is assigned a North American Industry Classification System ["NAICS"] code beginning with 72." 15 U.S.C. § 636(a)(36)(D)(iv). (NAICS codes beginning with 72 cover the accommodation and food services industries.) In other words, a restaurant business did not need to consider its affiliates when determining its number of employees for purposes of PPP eligibility. On the other hand, a different type of business that was an affiliate of a hotel or restaurant still needed to consider the hotel's or restaurant's employees in determining its own total number of employees. In a set of Frequently Asked Questions, SBA provided the following example:

> Company X wholly owns Company Y and Company Z (as a result, Companies X, Y, and Z are all affiliates of one another). Company Y owns a restaurant with 400 employees. Company Z is a construction company with 400 employees.
>
> • Company Y is eligible for a First Draw PPP Loan because it has 500 or fewer employees. The affiliation rules do not apply to Company Y, because it has 500 or fewer employees and is in the food services business (with a NAICS code beginning with 72).
>
> • The waiver of the affiliation rules does not apply to Company Z, because Company Z is in the construction industry. Under SBA's affiliation rules, 13 CFR 121.301(f)(1) and (3), Company Y and Company Z are affiliates of one another because they are under the common control of Company X, which wholly owns both companies. This means that the size of Company Z is determined by adding its employees to those of Companies X and Y.
>
> • Therefore, Company Z is deemed to have more than 500 employees, together with its affiliates. However, Company Z may be eligible to receive a First Draw

> PPP Loan as a small business concern if it, together with Companies X and Y, meets SBA's other applicable size standards. . . .

SBA, *Paycheck Protection Loans, Frequently Asked Questions* at 12 (Mar. 3, 2021).

20. To apply for a first draw PPP loan, a business would submit an SBA Form 2483 to an authorized lender. The application form required a potential borrower to specify, among other things, the number of employees, and whether the "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management with, any other business." The application form further required the applicant to certify, among other things, that:

- "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted,"
- "[t]he Applicant . . . employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry," and
- "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law."

21. In December 2020, Congress enacted the Economic Aid to Hard Hit Small Businesses, Nonprofits, and Venues Act, Pub. Law 116-260, Div. N, Tit. III, which, among other things, provided for eligible small businesses to obtain second draw PPP loans. Most eligible businesses could apply for second draw PPP loans of up to 2.5 times their average monthly payroll, with a maximum $100,000 annual salary per employee, during 2019 or during the one-year period before the date on which the loans were made, subject to a maximum amount of $2 million per business. 15 U.S.C. § 636(a)(37)(C)(i); *see also* SBA Form 2483-SD, Instructions. If an eligible small business had a NAICS code that began with 72 (Accommodation and Food Services), then the business could apply for a second draw PPP loan of up to 3.5 times its average monthly payroll during 2019 or during the one-year period before the date on which the loan was made, subject to a maximum amount of $2 million. 15 U.S.C. § 636(a)(37)(C)(iv).

22. An applicant for a second draw PPP loan could qualify as an eligible small business if (1) it had no more than 300 employees on average during the 12 months preceding its loan application or during the period it used to calculate average monthly payroll; and (2) its revenue during any quarter of 2020 was at least 25 percent lower than in the corresponding quarter in 2019. 15 U.S.C. § 636(a)(37)(A)(iv); *see also* SBA Form 2483-SD, Instructions. For purposes of determining an applicant's number of employees, the original PPP affiliation rules applied. 15 U.S.C. § 636(a)(37)(E).

23. To apply for a second draw PPP loan, a business would submit SBA Form 2483-SD to an authorized lender. This form required a potential borrower to specify, among other things, its NAICS code, the number of employees, "all owners of 20% or more of the equity of the Applicant," and whether "the Applicant or any owner of the Applicant [is] an owner of any other business or have common management (including a management agreement) with any other business." On the second draw PPP loan application form, the box for "Number of Employees" specifically said "including affiliates." The second draw application form also required the applicant to certify, among other things, that:

- "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted,"
- "[t]he Applicant, together with its affiliates . . . employs no more than 300 employees," and
- "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law."

24. The statutes creating the PPP provided that the SBA would reimburse PPP lenders at specified rates for processing loans. As relevant here, the rate for first draw loans of $2 million or more was 1 percent, *See* 15 U.S.C. § 636(a)(36)(P)(i)(I)(cc); 3 percent for first and second draw loans of more than $350,000 and up to $2,000,000, *See* 15 U.S.C. § 636(a)(36)(P)(i)(I)(bb), 15

U.S.C. § 636(a)(37)(L)(ii); and 5 percent for first draw loans of more than $50,000 and up to $350,000, *See* 15 U.S.C. § 636(a)(36)(P)(i)(I)(aa).

25. The PPP allowed full loan forgiveness if borrowers used loan proceeds as required by PPP rules and maintained their employee headcount. *See* 15 U.S.C. § 636m; SBA, *Frequently Asked Questions (FAQs) on PPP Loan Forgiveness* (Oct. 13, 2020). To the extent a borrower reduced its average number of employees after receiving the loan, the PPP reduced the forgiveness amount under a statutory formula. *See* 15 U.S.C. § 636m(d)(2).

**Background on Defendants' PPP Loans**

26. On April 15, 2020, SBA approved a first-draw PPP loan to SeaStreak Holding in the amount of $1,307,200.00 through BMO Bank. According to SBA data, SeaStreak Holding represented on the loan application that the sole proprietorship had 123 employees and classified its business operations under NAICS code 483113. NAICS Code 483113 applies to businesses primarily engaged in transporting cargo by water in coastal waters, on the Great Lakes System, or between domestic ports of the United States, Puerto Rico, and U.S. island possessions, including coastal and Great Lakes barge transportation. During the relevant PPP period, the applicable SBA industry size standard was 750 employees, including employees of applicable affiliates; Second Draw eligibility generally required 300 or fewer employees. Businesses classified under this code did not receive the industry-specific affiliation waiver available to qualifying businesses assigned NAICS codes beginning with 72. In 2020, businesses operating within this industry were subject to a size standard of $8.4 million in annual receipts. On September 2, 2021, SBA forgave the first-draw PPP loan, plus interest, in the amount of $1,324,820.00. SBA also paid the loan processor, BMO Bank, 1 percent of the loan amount, or $13,072.

27. On May 14, 2021, SBA approved a second-draw PPP loan to SeaStreak Holding in the amount of $1,668,475.00 through Valley Partners. According to SBA data, SeaStreak Holding represented on its second-draw application that it had 54 employees. On January 21, 2022, SBA forgave the second-draw loan, plus interest, in the amount of $1,679,227.00. SBA also paid the loan processor, Valley Partners, 1 percent of the loan amount, or $16,684.75. Together, SeaStreak Holding's first and second-draw PPP loans totaled $2,975,675.00, of which SBA forgave, plus interest, a combined amount of $3,004,047.00.

**Fraud Allegations**

**A. The Defendants Were Affiliates Of One Another.**

28. The Defendant –SeaStreak Holding– was an affiliate of Moran Towing Corporation, Interlake Steamship Company, and Mormac Marine Group, Inc., on the basis of common ownership, common management, and identity of interest among close relatives, because these entities were, upon information and belief, owned and controlled by members of the Barker and Tregurtha families who maintained director roles across the related entities. These interlocking family relationships and management roles created a presumption that the family members' interests should be treated as those of a single party and that their holdings should be combined when determining control. Accordingly, the borrowers were required to aggregate the employees of the family-controlled entities when determining their PPP eligibility.

**B. The Defendant Did Not Qualify For Their PPP Loans Under Any Of The Applicable Eligibility Standards.**

29. Defendant did not qualify for their first draw PPP loans under any of the first draw PPP loan eligibility standards and did not qualify for their second draw PPP loans under the 300-employee standard that applied to second draw loan recipients.

30. First, as Seastreak Holding's own PPP loan application shows, Seastreak Holding claimed only 123 employees when it applied for its First Draw PPP loan. That certified figure did not include the employees of Seastreak Holding's commonly controlled affiliates, including Moran Towing Corporation which, by its own account, employed over 1,000 people in its marine transportation business, and Interlake Steamship Company, which self-described as having approximately 400 employees. When the employees of these commonly controlled affiliates are aggregated with Seastreak Holding's own certified employees, as was required under 13 CFR 121.301(f), the resulting enterprise-wide employee count of approximately 1,500 to 2,000 employees, upon information and belief, exceeded the 500-employee standard applicable to Seastreak, Holding's First Draw PPP loan.

31. *Second,* for the same reasons as stated above, when the employees of Seastreak Holding's affiliates are aggregated with the 54 employees Seastreak Holding claimed on its Second Draw loan application, the resulting employee count of, upon information and belief, approximately 1,500 to 2,000 employees exceeded the 300-employee standard which was applicable to Second Draw loan recipients, for which no alternative sizing pathway was available.

32. *Third*, Defendant, together with its affiliated entities had far more in annual revenue than the highest revenue-based standard associated with the Defendant's NAICS code when it applied for its first draw PPP loans. Upon information and belief, Defendant and its affiliated entities yielded many tens of millions of dollars per year in revenue.

33. *Fourth*, upon information and belief, Defendant together with its affiliated entities had far more than $15 million in tangible net worth.

**COUNT I**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**
**(False Claim)**

34. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

35. Through the acts set forth above, before at least or on or about April 15, 2020 through at least on or about January 21, 2022, Defendant knowingly presented, or caused to be presented, false or fraudulent claims for payment to SBA for their PPP loans and loan forgiveness to which they were not entitled.

36. By virtue of the false or fraudulent claims that Defendant knowingly made or presented, or caused to be made or presented, Defendant violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**COUNT II**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**
**(False Records)**

37. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

38. Through the acts set forth above, before at least or on or about April 15, 2020 through at least on or about January 21, 2022, Defendant knowingly made, used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by SBA for their PPP loans and loan forgiveness to which they were not entitled.

39. By virtue of the false records and statements Defendant made, used, or caused to be made or used, Defendant violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**COUNT III**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(G)**
**(Reverse False Claims)**

40. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

41. Through the acts set forth above, before at least or on or about April 15, 2020 through at least on or about January 21, 2022, Defendant knowingly made, used, or caused to be made or used, false records or statements material to obligations to pay or transmit money or property to the Government, and/or knowingly concealed or knowingly and improperly avoided or decreased obligations to pay or transmit money or property to the Government, within the meaning of 31 U.S.C. § 3729(a)(1)(G),

42. By virtue of the false or fraudulent claims that Defendant knowingly made or presented, or caused to be made or presented, Defendant violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(G), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

**Prayer for Relief**

WHEREFORE, Relator demands and prays for the following relief:

1. That judgment be entered in favor of the United States for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper;

2. An award to Relator of a percentage of the proceeds of the action in accordance with 31 U.S.C. § 3730(d);

3. An award to Relator of its costs and reasonable attorney fees for prosecuting this action; and

4. All other relief as may be required or authorized by law and in the interests of justice.

Dated: August 18, 2026

Respectfully submitted,

19 CATCH, LLC

By its attorney,

Peter Katz, Esq.
Law Offices of Peter Katz, LLC
5 Vaughn Drive, Suite 308
Princeton, New Jersey 08540
peter@pkatzlegal.com
(609) 244-0500